**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER W., Plaintiff, | ) | |
| v. | ) | Case No. 1:25-CV-00087–NCC |
| FRANK BISIGNANO, Commissioner of Social Security, Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Christopher W. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). For the following reasons, the Court will dismiss the Plaintiff's complaint.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## I. Procedural History

Plaintiff filed his application for DIB on November 30, 2017. (Tr. 15, 26, 193–94). Plaintiff was initially denied on February 15, 2018, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 130–38). After a hearing, by decision dated September

10, 2019, the ALJ found Plaintiff not disabled (Tr. 12–28). On July 17, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1–6).

On September 15, 2020, Plaintiff filed a complaint in the United States District Court for the Eastern District of Missouri under Case No. 4:20–CV–01263–NCC. (Tr. 1204–05). The Court issued an order reversing and remanding this case for additional evaluation and a supplemental hearing on February 23, 2022. (Tr. 1207–19). After the supplemental hearing, the ALJ issued another unfavorable decision on October 4, 2023. (Tr. 1118–43). As such, Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. Legal Standard

Under the Social Security Act, the Commissioner has established a five–step process for determining whether a person is disabled. 20 C.F.R. § 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)

(quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430–31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's

decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re–weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact–finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## III. THE ALJ'S DECISION

Applying the foregoing five–step analysis, the ALJ here found that Plaintiff did not engage in substantial gainful activity from April 7, 2017, the amended alleged onset date, through his date last insured of December 31, 2017; that Plaintiff had the severe impairments of an affective mood disorder and post–traumatic stress disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 1124–27). The ALJ found that, during the relevant period, Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non–exertional limitations:

> he was able to understand, remember, and carry out simple instructions, and was able to use judgment to make simple work–related decisions. He could not perform work requiring a specific production rate (such as assembly line work or work that requires hourly quotas). He was able to adapt to occasional changes in a routine work–setting. He was limited to no direct interaction with the public (i.e., the public could be present, but he could perform no job tasks requiring interaction) and only occasional interaction with co–workers (which precludes tandem tasks, with "tandem tasks" defined as tasks required to be performed with at least one other co–worker contemporaneously, such as on an assembly line).

(Tr. 1127). The ALJ further found that during the relevant period, Plaintiff was unable to perform his past relevant work as a composite job of police officer and infantry crew member, and his other composite job as a tree trimmer and park aide, because the demands of that work exceeded Plaintiff's RFC. (Tr. 1135). However, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed including the following representative occupations: routing clerk, folding machine operator, and garment sorter. (Tr. 1136–37). Thus, the ALJ concluded that Plaintiff was not under a disability at any time from April 7, 2017, the alleged onset date, through December 31, 2017, the date last insured. (Tr. 1137).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the RFC is not supported by substantial evidence; and (2) the ALJ's hypothetical question to the vocational expert was incomplete.

### A. RFC

Plaintiff appears to raise two arguments with respect to the RFC: first, that the ALJ failed to adequately evaluate the medical opinion of Mark Altomari, PhD ("Dr. Altomari") and to

reconcile it with the statements of Kermit Johnson, RN, BSN, MS ("Mr. Johnson"); and second, that the RFC failed to include limitations evidenced in the record.

The RFC is the most a claimant can still do in a work setting despite the claimant's physical or mental limitations. 20 C.F.R. § 404.1545(a)(1); *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). An ALJ determines a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his or her limitations. *Page*, 484 F.3d at 1043; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000); *Hutsell v. Massanari*, 259 F.3d 707, 711–12 (8th Cir. 2001). Because it is a medical question, an ALJ's RFC assessment must be supported by some medical evidence of the claimant's ability to function in the workplace. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Cox*, 495 F.3d at 619. An ALJ may not draw upon his or her own inferences from medical reports. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

**1. Evaluation of Medical Opinion Evidence**

For claims like Plaintiff's, filed after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a). Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). An ALJ must explain how she considered the factors of supportability and consistency in her decision, but need not explain how she

considered the other factors. 20 C.F.R. § 404.1520c(b)(2). The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

At issue are two individuals' statements in the record addressing Plaintiff's mental health conditions. The first is non–examining state agency psychologist Dr. Altomari, who wrote a medical opinion dated February 14, 2018 as part of an initial review of Plaintiff's disability claim. (Tr. 102–04). The second is Mr. Johnson, Plaintiff's mental health intensive case manager. The record includes Mr. Johnson's notes from his visits with Plaintiff during the relevant period; Mr. Johnson also submitted two letters and testified at the 2019 administrative hearing on Plaintiff's behalf.

Dr. Altomari opined that Plaintiff's trauma and stressor–related disorders and his depressive, bipolar, and related disorders were severe impairments. (Tr. 103). Dr. Altomari further opined that Plaintiff had no limitation in the ability to adapt or manage oneself and he had moderate limitations in the ability to understand, remember, or apply information; the ability to interact with others; and the ability to concentrate, persist, or maintain pace. (Tr. 104). In support of his opinion, Dr. Altomari found that "there is no evidence of worsening of functioning or psychiatric [symptoms]" since the prior disability decision on April 6, 2017. (Tr. 104). Dr. Altomari further indicated that mental status exams showed normal speech, insight, and

judgment, and Plaintiff self–reported that he was doing well with no PTSD symptoms. (*Id.*). Dr. Altomari also noted Plaintiff's self–reported activities of daily living, stating that Plaintiff shopped, drove, cared for his daughter on his weekends, and was able to do household chores. (*Id.*). Thus, Dr. Altomari concluded, "[w]ith limited evidence and no worsening of impairment, [Plaintiff] would continue to be able to perform and persist with at least simple tasks, with limited contact with the public and coworkers, in a non–complex work environment" during the relevant period. (*Id.*).

In evaluating the supportability of Dr. Altomari's opinion, the ALJ noted that Dr. Altomari supported his conclusions with "narrative comments that contained specific citations to the evidence of record dated before and slightly after the claimant's date last insured of December 31, 2017." (Doc. 1132). As for consistency, the ALJ determined that Dr. Altomari's findings were "largely consistent with the rest of the record, including the additional evidence submitted at the hearing level" and pointed to a medical record from shortly after Plaintiff's date last insured as an example. (*Id.*). The ALJ therefore concluded that Dr. Altomari's opinion was "largely persuasive in this matter." (*Id.*).

The ALJ also considered Mr. Johnson's statements. On December 20, 2017, Mr. Johnson wrote a letter indicating that Plaintiff was participating in the Mental Health Intensive Case Management ("MHICM") program through the Veteran Affairs Medical Center. (Tr. 700). According to Mr. Johnson, the MHICM assists veterans such as Plaintiff who have been diagnosed with a serious mental illness and have had three or more frequent or long–term psychiatric hospitalizations within a 12–month period. (*Id.*). Plaintiff has been enrolled in the

program since February 2016. (*Id.*). Plaintiff is 70% "service connected"[1] but is considered 100% "service connected" due to VA unemployability. (*Id.*). Similarly, on February 5, 2019, Mr. Johnson wrote a letter indicating that Plaintiff continued to participate in the MHICM program (Tr. 286). Mr. Johnson again noted that since enrolling in the MHICM, Plaintiff meets with his case manager, Mr. Johnson, approximately 40 times a year, the psychiatrist for medication management and mental health evaluations approximately 6 times a year and has been evaluated for suicide risk five times (*Id.*).

During Plaintiff's June 12, 2019 administrative hearing, Mr. Johnson testified on Plaintiff's behalf. (Tr. 51–54). Mr. Johnson testified to the extent of his relationship with Plaintiff, indicating that he was Plaintiff's mental health intensive case manager at the VA hospital and had been for the past two and a half, almost three, years (Tr. 51). Mr. Johnson reported that Plaintiff was unstable. (*Id.*). As a result of Plaintiff's outbursts, Mr. Johnson testified that he had seen damaged walls—"holes in his living room and his back room the TV room, throughout his house." (*Id.*). As a part of Plaintiff's treatment plan, the team removed all the weapons from his home including his hunting weapons and the hatchets that he made in order to make the home a safer environment where Plaintiff did not have access to lethal means. (*Id.*). Mr. Johnson also reported clutter in Plaintiff's home including items that would normally be outside projects and alcohol on the coffee table at 10:00 a.m. (*Id.*).

The ALJ found that Mr. Johnson's statements had reduced probative value when the statements were made significantly after the relevant period, such as at the June 12, 2019

[1] "Service connected" refers to the Veterans Affairs' ("VA") disability program in which the VA provides compensation, a monthly tax–free payment, to veterans who got sick or injured while serving in the military and to veterans whose service made an existing condition worse. *See* U.S. Dep't of Veterans Affs., *VA disability compensation*, https://www.va.gov/disability/ (June 25, 2026).

hearing. The ALJ also noticed inconsistencies between the medical records Mr. Johnson generated during the relevant period and his later comments. By way of example, the ALJ noted that, despite Mr. Johnson's testimony at the 2019 hearing that Plaintiff was unstable and he observed holes in Plaintiff's walls from Plaintiff's outbursts, "[N]urse Johnson often saw the claimant in his home, but his contemporaneous notations [from the relevant period] do not generally reflect that the home was in significant disarray or bore the scars of behavioral outbursts." (Tr. 114). Furthermore, while the ALJ acknowledged Mr. Johnson's statement that he helped Plaintiff complete his January 2018 function report because Plaintiff was "unable to concentrate and follow instructions" and became "extremely anxious and irritated," (Tr. 248), the ALJ also observed that this was not reflective of Mr. Johnson's longitudinal treatment records for the relevant period. (Tr. 113). Specifically, the ALJ remarked that Mr. Johnson's treatment notes in 2017 did not record observations that Plaintiff had significant problems with concentration or attending to clinical interviews. (*Id.*). The ALJ also observed, "[T]he fact that the claimant went hunting in November of 2017, before then butchering the deer and smoking the meat, is not consistent with [N]urse Johnson's testimony that the claimant's access to weapons had been significantly restricted before his date last insured." (Tr. 113).

The above inconsistencies lie at the heart of the ALJ's evaluation of Mr. Johnson's statements. Contrary to Plaintiff's assertion that "the decision did not reconcile the findings of Dr. Altomari against the findings of Nurse Johnson" (Doc. 10 at 8), the ALJ discussed in detail how she "resolved inconsistencies between Dr. Altomari's prior administrative findings, and the notations provided by [N]urse Johnson, in significant part by relying more so on the mental status evaluation findings and *other contemporaneous notations in the record*, many of which were provided by [N]urse Johnson himself." (Tr. 114) (emphasis added). In other words, the

ALJ determined that Dr. Altomari's findings were consistent with the notes Mr. Johnson wrote during the relevant period pertaining to Plaintiff's condition. The ALJ observed:

> [N]urse Johnson's mental status evaluations of the claimant fail to illustrate disabling abnormalities, certainly not on any consistent basis. In fact, [N]urse Johnson consistently assessed the claimant to exhibit an appropriate overall demeanor or behavior during their visits. He did consistently assess the claimant to exhibit an affect that was depressed and irritable, but he also consistently described the claimant's affect as appropriate and friendly. One notation in the record illustrates that the claimant was "loquacious and tangential" during a portion of one appointment before his date last insured, but this notation represents an outlier, rather than the claimant's longitudinal baseline of functioning.

(Tr. 113). The relevant period for the ALJ's consideration was Plaintiff's amended alleged onset date of April 7, 2017, through his date last insured of December 31, 2017. The ALJ reasonably concluded that Mr. Johnson's statements during the relevant period "outweigh[]," in persuasive value, the evidence he offered later concerning periods outside the relevant period—and his testimony made 18 months after the relevant period. (Tr. 113). Although the record may indicate Plaintiff's mental health worsened *after* his date last insured, such evidence is not indicative of Plaintiff's mental condition during the period relevant to his claim. *See Thomas v. Sullivan*, 928 F.2d 255, 260–61 (8th Cir. 1991) (explaining that a claimant's worsening condition, which deteriorated after the ALJ's decision, could not act as the basis of determining claimant's condition at the time he was eligible for benefits); *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (explaining the ALJ need "only consider the applicant's medical condition as of his or her date last insured").

Furthermore, Plaintiff appears at times to take issue with the medical opinions themselves, arguing that Dr. Altomari's opinion "contains very little rationale" and "cites very limited objective medical evidence." (Doc. 10 at 11). The Court's review is limited "to whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency

factors, not whether [the Court] agree[s] with the ALJ's evaluation of the record evidence on those issues." *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (emphasis added). The Court will not "reweigh the evidence of record regarding the supportability and consistency factors" and instead will defer to the ALJ's conclusion unless it "falls outside the available zone of choice." *Id*. (citing *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024)). Therefore, to the extent Plaintiff raises similar arguments with respect to the ALJ's evaluation of these and other medical opinions, these arguments are unavailing.

In sum, the ALJ adequately explained the reasoning for finding Dr. Altomari's opinion largely persuasive and adequately explained how she reconciled that opinion with Mr. Johnson's statements. While her sentences regarding "consistency" and "supportability" may have been cursory, the substance of her discussion illustrates a meaningful consideration of whether Dr. Altomari's findings were consistent with the relevant record and sufficiently supported. *See Rudloff v. O'Malley*, No. 4:23 CV 416 CDP, 2024 WL 1140930, at *9 (E.D. Mo. Mar. 15, 2024) ("The ALJ is not required to use the word 'supportability' when considering persuasiveness."); *Beyes v. Kijakazi*, No. 4:22–CV–614 SRW, 2023 WL 1765185, at *8 (E.D. Mo. Feb. 3, 2023) ("Although the ALJ did not use the word 'inconsistent' when evaluating [a doctor's] medical opinion, failure to do so is not grounds for automatic reversal."); *Atwood v. Kijakazi*, No. 4:20–CV–1394–JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("The fact that the ALJ did not use the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal."). The Court therefore finds that the ALJ's explanation is supported by substantial evidence.

Although there may be some medical evidence in the record that supports the symptoms to which Mr. Johnson testified, this Court's task is not to reweigh the evidence presented to the

ALJ. In this case, the ALJ's conclusion after weighing the evidence fell within the available "zone of choice," and the Court cannot override that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**2. Whether the RFC is supported by substantial evidence**

Plaintiff further challenges the RFC because it did not include all of the limitations supported by the record, namely, Plaintiff's episodic outbursts. Plaintiff also suggests that the ALJ improperly based the determination of the RFC "solely upon the objective medical evidence" and did not adequately consider other factors. (Doc. 10 at 5).

In her discussion of the RFC, the ALJ explained that, during the relevant period, "[N]urse Johnson noted on only one occasion that the claimant exhibited a spontaneous outburst during their appointments. The record does not demonstrate that this occurred on any consistent basis, or at the frequency the claimant has alleged." (Tr. 114). While the ALJ acknowledged that Plaintiff had another outburst during his September 2022 hearing, "this occurred more than four and one–half years after the date last insured in this matter." (*Id.*). Nonetheless, the ALJ explained that the RFC's limitations "account for the potential that the claimant could become agitated while discussing his mental health symptoms or concerns," because, while necessary during mental health evaluations or appointments or his administrative hearing, such discussion "would not occur in the workplace, certainly not in a workplace with the interaction limitations and other restrictions enumerated in the above residual functional capacity." (Tr. 114).

The Court finds that the ALJ's findings with respect to Plaintiff's outbursts are supported by substantial evidence. As an initial matter, it does appear that the RFC contained restrictions related to Plaintiff's outbursts, as the ALJ considered one of Plaintiff's outbursts with Mr. Johnson in the larger context of his medical records and concluded that Plaintiff "had some

limitations in interacting with others before his date last insured but was able to sustain work involving *no direct interaction with the public* and only *occasional interaction with co–workers*." (Tr. 1132). The ALJ thereby included such limitations in the RFC. (Tr. 1127).

Furthermore, the claimant has the burden to establish RFC, and the RFC need only include the limitations supported by the record. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016); *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). "[W]ithout negating the ALJ's obligation to develop the record, plaintiff 'has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability…'" *Jones v. Kijakazi*, No. 1:23–CV–00016–SNLJ, 2024 WL 3509498, at *5 (E.D. Mo. July 23, 2024) (quoting *Jones v. Berryhill*, No. 1:17–CV–162 NAB, 2018 WL 4358269, at *2 (E.D. Mo. Sept. 13, 2018)); 20 C.F.R. § 404.1512. Here, the ALJ acknowledged the "angry outburst" that occurred with one of Plaintiff's mental health providers on November 24, 2017 (Tr. 346), but identified it as an "outlier" in the records from the relevant period. (Tr. 112). Indeed, while the majority of the records from the relevant period note that Plaintiff's affect was depressed and irritable, those same records also describe his affect as appropriate and friendly, his behavior and demeanor as appropriate, and his insight and judgment as good. (*See, e.g.,* 365, 349, 3334–35, 709–10, 713–14, 719).

The ALJ considered Plaintiff's allegations with respect to his outbursts and found that the record did not support the extent of them, and the Court will not re–weigh that evidence. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge the credibility and resolve conflicts in evidence."). The record provides substantial evidence to support the ALJ's RFC determination without additional limitations for episodic outbursts.

The Court also rejects Plaintiff's assertion that the ALJ based the RFC only upon the objective medical evidence and clinical findings, and that the ALJ impermissibly dismissed or did not incorporate other factors.

First, the ALJ reasonably considered Plaintiff's own reports to his health care providers during the relevant period. The ALJ noted that Plaintiff consistently communicated to Mr. Johnson that he was doing "okay" and had "no complaints of PTSD related symptoms." (Tr. 1132–33; *see, e.g.*, 337, 340, 351, 356, 365, 712–13, 719, 723). The ALJ also observed that Plaintiff rated the degree to which his "mental health symptoms had impacted his functioning over the previous week as only a three on a 10–point scale, where '10' represented 'severely impacted' functional abilities." (Tr. 1133, 342). The ALJ took further note of Plaintiff's responses on a Brief Psychiatric Rating Scale dated December 27, 2017, which indicated that he did not endorse experiencing symptoms in any areas other than "depressive mood" and "anxious depression"—resulting in a total pathology score of two. (Tr. 1133, 734).

Second, the ALJ reasonably considered Plaintiff's reported activities during the relevant period. The ALJ noted that, during the relevant period: Plaintiff prepared his own meals, in addition to preparing meals for his daughter when she visited; that he watched television, which required a level of sustained focus and attention; and that he went on a trip on which he hunted and killed a deer with a bow and arrow, then butchered the meat and smoked the meat in a wood–burning cooker. (Tr. 1126, 1128–29, 1130–32; *see* 239–40, 350, 352, 356, 359).

Accordingly, the ALJ did not rely solely on the state agency consultant's opinion or the clinical findings in reaching the RFC determination, but properly considered that evidence along with the rest of the evidence in the record, including Plaintiff's reports to his treaters, his treaters' observations, and his own testimony about his limitations. *See Casey v. Astrue*, 503 F.3d 687,

694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the non–examining physician] along with the medical evidence as a whole."); *see also Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016); 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence...is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

For the above reasons, the Court finds that the RFC is supported by substantial evidence.[2] The Court reiterates that its decision, as with the ALJ's, concerns the limited eight–month period of April 7, 2017, the amended alleged onset date, through Plaintiff's date last insured of December 31, 2017. The Court also acknowledges that the record contains conflicting evidence related to the severity of Plaintiff's mental impairments and Plaintiff's RFC, and that the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner*, 646 F.3d at 556.

[2] While Plaintiff mentions that the ALJ "fail[ed] to point to some medical evidence [sic]," (Doc. 10 at 6), the substance of his argument does not appear to address this issue. To the extent Plaintiff does argue that the ALJ does not point to some medical evidence, the Court rejects this argument. As noted above, the Court relied on, *inter alia*, both Dr. Altomari's findings and a series of Mr. Johnson's clinical findings and notations made during the relevant period. Furthermore, the ALJ was not required to rely on a particular medical opinion in making the RFC assessment. *See Hensley*, 829 F.3d at 932 ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion.") (citation and quotation marks omitted); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.") (quotation marks omitted).

### B. Question to the Vocational Expert

Finally, Plaintiff argues that the ALJ's decision should be remanded because the ALJ did not pose a complete hypothetical question to the vocational expert. Specifically, Plaintiff asserts that the hypothetical question needed to include "outbursts, or events," given Plaintiff's above–mentioned outbursts as evidenced in the record. (Doc. 10 at 14).

"In posing a hypothetical to a vocational expert, the ALJ need only include impairments that the ALJ finds credible." *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014); *see also Cook v. Kijakazi*, 2021 WL 4864708, at *4 (W.D. Mo. Oct. 19, 2021) ("[W]hen posing a hypothetical question to a [vocational expert], the ALJ needs to only include impairments that the ALJ finds credible and supported by the record.") (citing *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014)).

Here, as discussed above, the ALJ reasonably assessed the credible limitations posed by Plaintiff's outbursts and incorporated them into the RFC. The ALJ's question to the VE referenced a hypothetical individual with Plaintiff's, education, work experience, and RFC. (Tr. 1127, 1170–71). As previously discussed, the ALJ formulated Plaintiff's RFC by evaluating all the relevant evidence, including medical records, Plaintiff's subjective reports, and Plaintiff's activities during the relevant period. (*Id.* 18–23). Thus, the hypothetical question posed to the vocational expert adequately captured the credible consequences of Plaintiff's impairments. (*Id.*).

## V. Conclusion

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 22nd day of September, 2026.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE